IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JIMMY L. KERFOOT, :
:
    Plaintiff :
:
v. : 1:05-CV-94 (WLS)
:
HAROLD BREEDEN, et. al., :
:
    Defendants :
:

**ORDER**

Before the Court is Defendant Harold Breeden's Motion to Dismiss Amended Complaint. (Doc. 32). For the following reasons, Defendant Harold Breeden's Motion to Dismiss Amended Complaint (Doc. 32) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**DISCUSSION**

**I.    Background**

Plaintiff initiated this action on July 14, 2005 against Defendant Harold Breeden ("Defendant Breeden") in his individual capacity, and in his official capacity as the Sheriff of Lee County, Georgia, and Lee County, Georgia, by and through its Board of County Commissioners ("Defendant Lee County"). (Doc. 1). In response to Plaintiff's complaint, Defendants filed separate motions to dismiss on August 17-18, 2005. (Docs. 6, 9). Thereafter, on September 22, 2005, Plaintiff filed responses to Defendants' motions and a motion to amend his complaint. (Docs. 18, 19, 20). On December 20, 2005, the Court entered an order denying Defendants' motions to dismiss without prejudice and granting Plaintiff's motion to amend. (Doc. 25). Thereafter, Plaintiff filed his amended complaint on March 15, 2006. (Doc. 28).

In his amended complaint, Plaintiff claims that Defendants: 1) deprived him of his right to free speech, 2) deprived him of his right to a free and fair election, and 3) deprived him of his right to seek elective office. (Doc. 28). He seeks redress for these alleged constitutional

1

violations pursuant to 42 U.S.C. § 1983. *Id*.

Here, Defendants Lee County, Georgia and Harold Breeden move separately pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the above-captioned action for failure to state a claim for which relief can be granted. (Docs. 30, 32).

## II. Motion to Dismiss Standard

"On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true." Stephens v. Dep't of Health and Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). "A motion to dismiss is granted only when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (internal quotations omitted)). While "a plaintiff is not held to a high standard with respect to a motion to dismiss for failure to state a claim," to survive such a motion, Plaintiff "must do more than merely state legal conclusions; [he is] required to allege some specific factual bases for those conclusions or face dismissal of [his] claims." Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citing Wagner v. Daewoo Heavy Industries Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), rev'd on other grounds, 314 F.3d 541 (11th Cir. 2002) (en banc)). Nevertheless, motions to dismiss are viewed with disfavor and are rarely granted. Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997).

## III. Plaintiff's Statement of Facts

Plaintiff alleges the following facts in his amended complaint.[1] On or about April 26, 2004, Plaintiff, a resident of Lee County, Georgia, filed an application with the Lee County Board of Elections to seek elective office as Sheriff of Lee County, Georgia, as a Republican Party

---

[1] As the facts are to be construed in the light most favorable to the non-moving party when reviewing a motion to dismiss, the Court adopts, solely for the sake of this motion, the version of material facts as alleged by Plaintiff, the non-moving party. *See* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

2

candidate. After filing his application, Plaintiff was initially certified as a candidate to seek elective office in Lee County. (Doc. 28).

On or about April 30, 2004, Defendant Breeden, then the incumbent Sheriff of Lee County, using his office as Sheriff of Lee County (by use of official letterhead), filed a request for Disqualification of Plaintiff as a candidate for the Office of Sheriff of Lee County. The stated grounds for the disqualification request were: 1) Plaintiff did not satisfy the requirement of providing a certified copy of a high school diploma or recognized equivalent in a timely manner as required by law, 2) Plaintiff did not satisfy the requirement of providing a certified copy of his birth certificate in a timely manner as required by law, and 3) Plaintiff filed a false affidavit when he swore and affirmed that the information on said affidavit was correct. (Doc. 28, Exh. A). Plaintiff, a 1976 Lee County High School ("High School") graduate, unsuccessfully attempted to obtain a certified copy of his high school diploma from the High School. (Doc. 28). As a result of Defendant Breeden's request, Plaintiff was decertified as a Republican Party candidate to seek elective office as Sheriff of Lee County. *Id*.

Initially, Plaintiff appealed the aforesaid decertification. He abandoned said appeal and thereafter filed an application as an independent candidate to seek elective office as Sheriff of Lee County. Plaintiff's application as an independent candidate to seek elective office as Sheriff of Lee County was initially certified. Subsequently, Plaintiff's application as an independent candidate to seek office as Sheriff of Lee County was decertified. Due to Plaintiff's unsuccessful attempts at certification as a candidate for the office of Sheriff of Lee County, ballots for the 2004 elections for Sheriff of Lee County were printed without bearing Plaintiff's name. *Id*.

Thereafter, Plaintiff campaigned as a write-in candidate for Sheriff. Deputies employed by Defendant Breeden as Sheriff of Lee County, and acting under Defendant's instructions: 1) threatened to arrest Plaintiff if he did not remove campaign signs, 2) researched Lee County property records to determine ownership of properties displaying Plaintiff's campaign signs, and

3) harassed and intimidated owners of properties which displayed Plaintiff's campaign signs, by informing said owners that they "could have problems." *Id*. Furthermore, the Committee to Re-Elect Breeden caused to be published on October 27, 2004 in the *Lee County Ledger*, a written advertisement which alleged, *inter alia*, that Plaintiff had been served with 22 civil lawsuits in local courts during the last 4 years for not paying bills and that Plaintiff had been arrested 3 times. (Doc. 28, Exh. C). Plaintiff publicly denied that he had been sued 22 times and asserts that, although he had been accused of criminal acts, he had never been arrested and had never been jailed. (Doc. 28).

On or about November 1, 2004, Defendant Breeden gave an interview to WALB television station, while sitting at his desk in the Sheriff's Office wearing a shirt upon which the words "Sheriff of Lee County" was printed. *Id*. In that interview, Defendant Breeden waved documents before the camera and stated that those documents proved that Plaintiff had been served with 22 lawsuits and that Plaintiff had been in the Lee County jail on three occassions. During the course of the interview referred to in the preceding paragraph, Defendant Breeden provided the interviewer with a photograph that was alleged to have been a "mug shot" taken in connection with an arrest of Plaintiff. *Id*. Plaintiff contends that alleged "mug shot" is an "altered document." *Id*. Plaintiff further contends that he was not served with twenty-two (22) civil lawsuits by Lee County Sheriff's deputies, that he has never been jailed in the Lee County jail, and that no "mug shot" has ever been taken of him by any employee of the Lee County Sheriff's Office in the Lee County Jail. *Id*.

### IV.     Defendant Breeden's Motion to Dismiss

Defendant Breeden moves to dismiss Plaintiff's claims, asserting that the amended complaint does not adequately state a claim that Plaintiff's rights to free speech, to seek elective office, and to a fair and free election were violated. (Doc. 32). Defendant further asserts he is entitled to qualified immunity as a state actor. *Id*.

### A.     Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193 (11th Cir. 2002) (internal quotation marks and citations omitted). To receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id*. at 1194. "If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity." *Id*. A "government official proves that he acted within his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotations and citations omitted).

Notably, in his Motion, Defendant remarked that "[c]ourts have commented that the issue of discretionary authority 'is usually an uncontested issue and one which courts are liable to skip over in their analysis.'" (Doc. 33)(quoting Holland v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). In this case, however, Plaintiff affirmatively contests Defendant's assertion that "[t]here is no doubt that under the allegations contained in Plaintiff's complaint, Breeden was acting within his discretionary authority when he took the actions alleged against him." (*See* Doc. 33). In fact, Plaintiff purports to distinguish the facts of this case from a series of United States Supreme Court and Eleventh Circuit rulings, where it was found that the officials were acting under discretionary authority. (*See* Doc. 39). Plaintiff particularly distinguishes this case from Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), by arguing that unlike in Manders, the actions complained of by Plaintiff in this case are not among the duties delegated by the State of Georgia. (Doc. 39). Plaintiff further maintains that "[t]he actions taken by Defendant Breeden against the Plaintiff can not be said to fall under law enforcement, state courts, or corrections." *Id*.

Based on the apparent genuine controversy over whether Defendant Breeden's alleged

5

actions were within his discretionary authority, the Court declines to "skip over" this issue in its analysis. The Court further finds that Defendant fails to sustain his burden to address, let alone show objective circumstances, that would compel the conclusion that the actions as alleged were taken pursuant to the performance of his duties as Sheriff. It is therefore found that Defendant has not proven that he acted within his discretionary authority such that it may be found that he enjoys qualified immunity for his actions.

### B. Section 1983 Claims against Defendant in his Individual Capacity

"To state a claim for relief, [Section 1983 litigants] have the burden of alleging two elements with some factual detail: 1) that they suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States, and 2) that a person 'acting under color of law' caused the deprivation, either by an act or omission." Ross v. Alabama, 893 F. Supp. 1545, 1553 (M.D. Ala. 1995) (citing Wideman v. Shallowford Community Hospital, Inc., 826 F.2d 1030, 1032 (11th Cir. 1987)). Here, Plaintiff claims that Defendant, acting under color of state law through his deputies, threatened to arrest Plaintiff if he did not remove campaign signs and harassed and intimidated owners of properties which displayed Plaintiff's campaign signs, by informing said owners that they "could have problems." *Id*. Plaintiff alleges that these actions, together with the October 27, 2004 publication by the Committee to Re-Elect Breeden in the Lee County Ledger of, a written advertisement which alleged, *inter alia*, that Plaintiff had been served with 22 civil lawsuits in local courts during the last 4 years for not paying bills and that Plaintiff had been arrested 3 times deprived Plaintiff of his First Amendment rights of free speech and to seek elective office and his right to a fair and free election guaranteed by the Fourteenth Amendment.[2] (*See* Doc. 28).

Upon review of the allegations contained in Plaintiff's Complaint, the Court finds that it

---

2      The Court notes that Plaintiff incorrectly asserts that the right to a fair and free election unencumbered by interference of the States proceeds directly from the First Amendment. Said right has been found by the courts to proceed from the Fourteenth Amendment via incorporation of the First Amendment. *See* Williams v. Rhodes, 393 U.S. 23, 30 (1968).

is not beyond doubt that Plaintiff could not show, that Defendant's actions, taken under the color of state law, deprived Plaintiff of clearly established Fourteenth Amendment rights of which Defendant had actual notice or of which a reasonable person would have known. *See* Arnold v. Bd. of Educ., 880 F.2d 305, 310 n.2 (11th Cir. 1989) ("courts should be mindful that 'fundamental rights and important questions of public policy are involved in actions under the various civil rights statutes and should not dismiss [a Section 1983] complaint unless it clearly is frivolous or fails to state a claim for relief."); *see also* Williams, 393 U.S. at 30 (1968) ("the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively...rank among our most precious freedoms" and is protected from infringement by the States through the Fourteenth Amendment.); Lubin v. Panish, 415 U.S. 709, 716 (1974) (the State's legitimate interest in keeping its ballots within reasonably manageable limits "must be achieved by a means that does not unfairly or unnecessarily burden either a minority party's or an individual candidate's equally important interest in the continued availability of political opportunity. The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters").

While Defendant is correct in asserting that Plaintiff does not claim or otherwise show that any sign was removed, in light of the alleged facts and the nature of the rights alleged to have been violated, the Court is not persuaded at this time this failure alone demonstrates beyond doubt that Plaintiff cannot prove any set of facts that would support any or all of his claims. The Court is further unpersuaded that Plaintiff cannot prove any set of facts that could withstand a challenge of qualified immunity.[3] It can at least be argued that threats to remove signs or

---

[3] Respecting the instant Motion to Dismiss, it is found, not that Defendant has failed to assert the defense of qualified immunity, but rather, that in light of the facts presented, that he has failed to do so in such a fashion that mandates dismissal of this action. Specifically it is found that it the facts alleged by Plaintiff that directly rebut Defendant's conclusory, and otherwise unsupported assertion that "[t]here is no doubt that...[Defendant] was acting in his discretionary authority when he took the actions alleged against him." Therefore, it cannot be found at this time that Defendant has satisfactorily demonstrated that he was performing acts within his discretionary

7

intimidation of property owners with respect to placement of such signs might rise to the level of unconstitutional interference with Plaintiff's and voters' rights.  The Court therefore finds that at this stage in the litigation Defendant has not sufficiently  carried his burden of showing that as a matter of law, the claims in question should be dismissed.  This does not mean that Plaintiff will be able to overcome a motion for summary judgment or that he will lose such a motion.  However, without a developed record, the Court declines to grant Defendant Breeden's Motion to Dismiss (Doc. 32) as to Plaintiff's claims against Defendant in his individual capacity since it is not clear that upon an undeveloped record Defendant must prevail.  Accordingly, Defendant Harold Breeden's Motion to Dismiss Amended Complaint (Doc. 32) is **DENIED** as to Plaintiff's claims against him in his individual capacity.

**C.     Section 1983 Claims against Defendant in his Official Capacity**

To sustain a Section 1983 action against Defendant in his official capacity, Plaintiff must identify an official government policy or custom that caused his injury.  Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003).   Here, Plaintiff does not allege an officially promulgated policy by Defendant in his official capacity.  (*See* Docs. 1, 39).   While Plaintiff does assert that Defendant maintained an unofficial custom or policy of using his deputies to harass and intimidate Plaintiff and his supporters by using powers of his office to interfere with Plaintiff's constitutional rights related to the election for Sheriff of Lee County, the only example of the custom or policy at issue derives from the facts alleged in this case.  *Id*.    Plaintiff's allegation alone, even when viewed in the light most favorable to Plaintiff, is insufficient to prove the "permanent and well settled" practice necessary to establish a "custom" as that term is defined in Section 1983 jurisprudence.  *See* Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th

---

authority such that, to the extent otherwise appropriate, qualified immunity may attach to the acts in question. *See* Stanley v. City of Dalton, 219 F.3d 1280, 1285 (2000) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

.

8

Cir. 1991). Based on this Complaint, Plaintiff cannot sustain his Section 1983 claims against Defendant in his official capacity. Defendant Breeden's Motion to Dismiss Amended Complaint (Doc. 32) is therefore **GRANTED** as to Plaintiff's claims against him in his official capacity.

## **CONCLUSION**

For the foregoing reasons, Defendant Harold Breeden's Motion to Dismiss Amended Complaint (Doc. 32) is **GRANTED-IN-PART** with respect to Plaintiff's claims against him in his official capacity and **DENIED-IN-PART** with respect to Plaintiff's claims against him in his individual capacity.

**SO ORDERED**, this ___29th___ day of March, 2007.

        /s/W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT JUDGE**